**Carlton SPRINGER, Plaintiff,**

v.

**PARTNERS IN CARE, Defendant.**

**No. CIV.A. 96–CV–6812 (DGT).**

United States District Court,
E.D. New York.

Aug. 25, 1998.

134

Carlton Springer, Brooklyn, NY, pro se.

Jackson, Lewis, Schnitzler & Krupman, by Scott T. Baken, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiff, who is pro se, brings this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that defendant discriminated against him based upon his gender/sex when defendant terminated plaintiff's employment. Defendant moves, in the alternative, to dismiss plaintiff's complaint or for summary judgment, on the grounds that plaintiff's complaint is barred by the doctrine of laches and addi-

tionally, because the Equal Employment Opportunity Commission exceeded its authority in issuing plaintiff a notice of right to sue.[1] For the reasons set forth below, defendant's motions are denied.

### Background

Defendant Partners in Care ("Partners") provides home health aide and personal care worker service to elderly and infirm clients. Plaintiff, an African American male, began his employment with Partners on October 21, 1985, as a payroll coordinator. Plaintiff's responsibilities included compiling and recording data for Partners' payroll periods, which end each Friday. Plaintiff was discharged on November 8, 1985, less than three weeks after his employment commenced, for poor performance, after having been warned that his continued untimely and inaccurate work was unacceptable.

Plaintiff filed an administrative complaint simultaneously with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") on or about November 13, 1985, alleging that Partners terminated his employment because of his sex, race, and color in violation of the New York State Human Rights Law and Title VII of the Civil Rights Act of 1964 ("Title VII"). The complaint alleges several unsolicited encounters with "Anthony," a Caucasian male co-worker of plaintiff's. Plaintiff claims that this co-worker: sent him a note expressing "a personal interest in [plaintiff]"; informed plaintiff that he "wanted [plaintiff]"; "sexually harass[ed]" plaintiff at the copy machine; and "approached [plaintiff] in the men's room and put his arms around [plaintiff] and pinched [him] on the cheek." DHR Complaint, ¶¶ 5, 6.

On September 25, 1986, the DHR issued a Determination and Order After Investigation ("DHR Determination") which found no probable cause that Partners engaged in unlawful discriminatory practice by terminating plaintiff. *See* DHR Determination at 1. This determination was based on an investigation which revealed that as early as one week into his employment, plaintiff was warned about performance problems, including unacceptable mistakes and delays in completing assignments. *See id.* The investigation demonstrated that plaintiff's supervisor, Lillian Pabon, advised plaintiff after only one week that she had observed performance problems in connection with the first payroll plaintiff was responsible for processing, for the week ending October 18, 1985. On that occasion, plaintiff had erroneously included certain employees on the payroll who had not worked that week, while failing to process payroll checks for more than twenty home heath aides because he did not record the hours they worked. Immediately after this incident, Pabon spoke with plaintiff and informed him that a mistake of this magnitude was unacceptable and that plaintiff was taking too long to complete his assignments. In response to this reprimand, plaintiff protested that he had been given too many tasks to complete. Pabon advised plaintiff that other staff members were able to handle their assignments and that everyone was expected to do the same amount of work.

During this meeting, Pabon also informed plaintiff that she had received complaints about plaintiff from three female African American staff members who objected to plaintiff's attempts to socialize with them during work hours and his asking them out on dates. Plaintiff was advised to confine his social activities to non-work time. Plaintiff responded that he was trying to be friendly.

Also at this meeting, plaintiff told Pabon that Anthony Murphy, a male Caucasian employee who was employed by Partners as a mail clerk, was "approaching" him during working time. Plaintiff also informed Pabon that he had received a note from someone but was not certain who had sent it. Plaintiff does not appear to have indicated to Pabon the nature of this note.[2] Pabon assured

---

1. Although it would appear from the New York State Division of Human Rights' determination of no probable cause that plaintiff's claims are completely without merit, defendant cannot seek summary judgment on the merits of the case at this point because plaintiff has not yet had an opportunity to conduct discovery.

2. Plaintiff attached a copy of a handwritten note to his DHR and EEOC complaints. This note, presumably from the co-worker of which plaintiff

plaintiff that she would speak with Murphy. That same day, Pabon met with Murphy and warned him not to bother plaintiff. Murphy claimed that he had only been joking.

Several days later, plaintiff informed Pabon that Murphy was continuing to disturb him. Although plaintiff made general complaints to Pabon that Murphy was "approaching" or "harassing" him, plaintiff did not relate the specific incidents involving Murphy that he described in paragraphs five and six of his complaint to the DHR and the EEOC. Pabon again warned Murphy to "stop playing games." Murphy replied that he had done nothing to plaintiff since he had received Pabon's initial warning.

Despite warnings about the necessity for improving both the speed and accuracy of his work, plaintiff's performance showed little improvement in the weeks that followed. He continued to take excessive time in completing assignments and his accuracy did not improve. At the end of the next payroll period, which ended on October 25, 1985, Pabon again detected numerous computation errors in plaintiff's work. Following this second incident, Pabon called plaintiff to her office and advised him that he was being terminated effective November 8, 1985, because of "repeated and significant payroll errors and because he could not complete his assignments in a timely manner." Def. Response to DHR, dated January 14, 1986.

It appears that no further action was taken with respect to plaintiff's administrative complaints between September 25, 1986, the date on which the DHR issued its determination of no probable cause, and October 1, 1996, when the EEOC issued plaintiff a Notice of Right to Sue. Plaintiff claims that he made "occasional telephone calls" to the DHR and

the EEOC during that intervening ten year period in order to ascertain the status of his case but that each time he was told that "the matter was under investigation ." Pl. Mem. in Opp'n to Def. Mot. for Summ. J. Plaintiff claims that in August, 1996, he got tired of waiting for the investigations to be completed and requested a Right to Sue Letter from the EEOC, which he received on October 1, 1996. *See id.* On November 25, 1996, plaintiff filed a complaint with this court, alleging that he had been terminated in violation of Title VII.[3]

## Discussion

Partners moves to dismiss plaintiff's complaint or alternatively, for summary judgment, on the ground that plaintiff's claims are barred by the doctrine of laches, in that plaintiff waited more than ten years after the alleged discriminatory act to request a Notice of Right to Sue from the EEOC and file his complaint in federal court, and that this delay has severely prejudiced Partners' ability to investigate and respond to plaintiff's allegations. Partners also argues that the EEOC's ten year inaction in processing plaintiff's charge represents an abuse of that agency's authority and as such, the EEOC improperly issued plaintiff a Notice of Right to Sue.

### (1)

■ Partners first argues that the doctrine of laches bars plaintiff's claims because he failed to take any action in connection with his administrative charge for an excessive period of time. Partners contends that this delay constitutes unfair prejudice, as it significantly impedes Partners' ability to adequately investigate plaintiff's claims and to proffer evidence and/or witnesses in response to those claims.[4] Specifically, Partners ar-

---

complained to Pabon, described the author's "deep love" for plaintiff and contained a request that plaintiff meet the author of the note in a room within the office that day in order that the author might confess his feelings for plaintiff in person.

**3.** In the section of the federal complaint form directing plaintiff to indicate on which bases he alleges discrimination, plaintiff checked only the line next to "gender/sex," whereas he had alleged sex, race, and color as the bases of discrimination on his DHR and EEOC complaints.

**4.** Partners asserts that after receiving a copy of plaintiff's complaint in this action, counsel for defendant sent Freedom of Information requests regarding plaintiff's administrative complaint to the DHR and the EEOC. In response to the Freedom of Information request it received, the DHR informed defense counsel, by letter dated February 7, 1997, that it had issued a no probable cause determination dismissing plaintiff's administrative complaint on or about September 25, 1986, but that a copy of the case file could not be provided to defense counsel because the agency had destroyed the file pursuant to appli-

gues that it no longer possesses any documents that pertain to plaintiff or his employment with Partners, and additionally, that Partners no longer employs any individuals who possess personal knowledge of any facts relevant to plaintiff's claims. Partners argues that plaintiff's delay in bringing this suit is inexcusable, given that plaintiff made no effort to communicate with the EEOC regarding the status of his administrative complaint with that agency between November, 1985 and July, 1996.

 Laches is "an equitable defense based on the ... maxim vigilantibus non dormientibus aequitas subvenit (equity aids the vigilant, not those who sleep on their rights)." *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 259 (2d Cir.1997), *cert. denied,* —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997)(*quoting Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.1989), *vacated on other grounds,* 891 F.2d 401 (2d Cir.1989)). The doctrine bars a plaintiff's equitable claim where he is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ivani Contracting Corp.,* 103 F.3d at 259 (internal quotations and citation omitted). In order for a claim to be dismissed on the ground of laches, a defendant must make a two-part showing: first, that plaintiff's delay in litigating was unreasonable and inexcusable, and second, that the defendant has been substantially prejudiced. *See Southside Fair Housing Comm. v. City of New York,* 928 F.2d 1336, 1354 (2d Cir.1991); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 272 n. 15 (2d Cir.1981); *Tunis v. Corning Glass Works,* 698 F.Supp. 452, 454 (S.D.N.Y.1988).

Partners argues that plaintiff did nothing for ten years with respect to his administrative charge with the EEOC, and that this delay is unreasonable and inexcusable. As previously mentioned, however, plaintiff claims that he did make "occasional telephone calls" to the DHR and the EEOC

during this period of time in order to ascertain the status of his case, but that he was repeatedly told that "the matter was under investigation." Pl. Mem. in Opp'n to Def. Mot. for Summ. J. While no evidence of these efforts has been offered by plaintiff or appears in the Freedom of Information Request to which the EEOC responded, neither has Partners proffered any evidence that plaintiff did not make inquiries to the EEOC concerning the status of his administrative charge. Nor has Partners established that it is the usual custom and practice of the EEOC to record all telephone inquiries made to ascertain the status of an individual's administrative charge, thereby suggesting that the absence of such notations in plaintiff's EEOC file indicates that he did not make any inquiries. Furthermore, for the purpose of either a motion to dismiss or summary judgment, plaintiff's allegations must be accepted as true. Assuming that plaintiff made at least occasional inquiries to the EEOC during the ten year period in question, it cannot be said that, as a matter of law, plaintiff's delay in prompting the EEOC to issue a Notice of Right to Sue was unreasonable and inexcusable.

 The nature of Title VII's remedial framework dictates that courts must be circumspect in considering motions for dismissal based on laches in Title VII cases. *See Staples v. Avis Rent–A–Car System, Inc.,* 537 F.Supp. 1215, 1219 (W.D.N.Y.1982)("To allow dismissal of a Title VII action on laches grounds would, except in the most unusual circumstances, do injustice to the intent of the framers of Title VII."). Second Circuit case law fully comports with this view. Indeed, a recent case highlights the aversion on the part of courts in this Circuit to curtailing federally enumerated statutes of limitation on laches grounds. *See Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 260 (2d Cir.1997)("[S]eparation of powers principles dictate that federal courts not apply laches to bar a federal statutory claim that is

cable law. The EEOC, in response to the Freedom of Information Request it received, informed defense counsel by letter dated March 7, 1997, that plaintiff contacted the EEOC on or about August 12, 1996, to request a Notice of Right to Sue, and that the Notice had been issued

to plaintiff on or about October 1, 1996. The EEOC provided defense counsel with copies of the limited documentation contained in plaintiff's case file. It appears that no explanation was provided by the EEOC for the long period of inaction with respect to plaintiff's case.

timely filed under an express federal statute of limitations.")(*quoting Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir.1995)). *See also Abidekun v. New York City Transit Auth.*, 1998 WL 296372, at *3 (E.D.N.Y. June 4, 1998)(laches inapplicable where plaintiff, who received right to sue letter more than ten years after filing charge with EEOC, filed suit within ninety days of receiving letter; plaintiff's claims were technically timely)(*citing Ivani Contracting Corp.*, 103 F.3d at 260); *Staples*, 537 F.Supp. at 1219 ("Plaintiff brought suit within the time allotted after he had received a right-to-sue letter from the EEOC. He was not required to litigate prior to the termination of the EEOC's investigation and attempts at conciliation.... It can hardly be said that the plaintiff's delay was inexcusable when he accommodated the spirit of Title VII by awaiting completion of the administrative process before filing suit."); *Tunis v. Corning Glass Works*, 698 F.Supp. 452, 454 (S.D.N.Y.1988)("This court has placed a strict construction on the element of unreasonable and unexcused delay in the context of Title VII suits .... [I]t is not unreasonable per se for an aggrieved party to delay filing an action in federal district court pending the outcome of the administrative process.")(internal quotations and citations omitted).

Furthermore, to deny dismissal based on laches in this case is particularly justified in light of the fact that plaintiff is proceeding pro se. *See Myree v. Local 41, International Bhd. of Elec. Workers*, 789 F.Supp. 597, 615 (W.D.N.Y.1992) ("Particularly in light of the fact that plaintiff was proceeding pro se at that time, and recognizing Title VII's generally complex and comprehensive administrative scheme, this Court does not find the plaintiff's delay so unreasonable under the facts in this case so as to bar his claim under the doctrine of laches."). In *Myree*, a pro se plaintiff filed an administrative charge with the DHR and the EEOC simultaneously. The DHR found probable cause for discrimination, and although the EEOC apparently deferred to the DHR for purposes of investigating the plaintiff's claims, there was no evidence that the EEOC issued any kind of documentation or statement to the plaintiff concerning his case. There also was "no

evidence with respect to the plaintiff's attempt to prod the EEOC into issuing a final determination or a Right to Sue Letter ... or whether the plaintiff realized sooner that he has a right to sue in federal court." *Id.* 789 F.Supp. at 615. The plaintiff requested and received a Notice of Right to Sue more than ten years after the EEOC deemed the plaintiff's charge filed and more than eight years after the DHR issued its finding of probable cause. The district court learned, through its own inquiries, that the EEOC claimed it had never received notice of the DHR's final determination and that was why it had not issued plaintiff a Notice of Right to Sue until he requested one. Distinguishing cases from other circuits that have dismissed Title VII cases on laches grounds, *see Garrett v. General Motors Corp.*, 844 F.2d 559 (8th Cir.1988); *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676 (7th Cir.1985), the district court for the Western District of New York found that the absence of evidence indicating what efforts the plaintiff took to pursue his Title VII claim precluded a finding that he had done nothing in connection with his claim for an unreasonable period of time. *See Myree*, 789 F.Supp. at 616 ("[I]n this case there is absolutely no evidence before this Court to indicate what efforts, if any, the plaintiff undertook to pursue his Title VII claim with the EEOC. Therefore, this Court cannot find ... [that] the plaintiff simply did nothing for an extended period of time."). The court also noted that unlike the plaintiff in *Jeffries* who was represented by counsel during his administrative proceedings, the plaintiff in *Myree* was pro se. *See id. See also Rozen v. District of Columbia*, 702 F.2d 1202, 1204 (D.C.Cir.1983)(declining to hold plaintiff responsible for EEOC's delay in issuing Notice of Right to Sue because "[plaintiff] had a right to assume that such notice would be forthcoming, and we cannot impute to [plaintiff], proceeding pro se, knowledge of the statutory scheme that would have authorized him to file suit absent such notice.").

The facts of *Myree* are closely analogous to the facts of this case. Plaintiff claims, and Partners does not contest, that he received no correspondence from the EEOC concerning the status of his charge after he received

the DHR's determination of no probable cause. Plaintiff claims that during the approximately ten years that followed, he made several attempts by telephone to ascertain the status of his file and that he was advised during each of these attempts that "the matter was under investigation." Pl. Mem. in Opp'n to Def. Mot. for Summ. J. This being a motion to dismiss, or alternatively, for summary judgment, all inferences must be drawn in favor of the nonmoving party. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998), *cert. denied,* — U.S. ——, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998). Thus, for purposes of these motions, it must be assumed that plaintiff did make the inquiries that he claims to have made. As such, it cannot be said that plaintiff "simply did nothing for an extended period of time" *Myree,* 789 F.Supp. at 616, before he grew tired of waiting and requested a Notice of Right to Sue from the EEOC. Furthermore, upon receiving his Notice of Right to Sue, plaintiff commenced this action within the statutorily delineated ninety days. Thus, plaintiff's claim is timely, and Partners' assertion that his delay was unreasonable must fail.

■ Even assuming, however, that plaintiff's delay in requesting a Notice of Right to Sue was unreasonable, it is far from clear that defendant has made an adequate showing of prejudice to justify dismissal based on laches. Partners argues that it is prejudiced by plaintiff's delay because it no longer possesses documentation relating to plaintiff or his employment with Partners, and additionally, because Partners no longer employs any individuals who possess personal knowledge of any facts relevant to plaintiff's claims. These claims are unpersuasive. First, it is well established that mere conclusory assertions as to anticipated difficulties in putting on a defense are not sufficient to constitute prejudice for purposes of establishing laches. *See Kawatra v. Medgar Evers College,* 700 F.Supp. 648, 653–54 (E.D.N.Y.1988)("The fact that there have been personnel changes or that employees have retired is irrelevant unless those employees are unavailable. The affidavit submitted by the defendants is insufficient to establish that most of the potential witnesses are unavailable.")(internal quotations and citation omitted); *Staples v. Avis Rent–A–Car Sys., Inc.,* 537 F.Supp. 1215, 1219 (W.D.N.Y.1982)("Termination of employment alone is insufficient and the defendant should show, at a minimum, that the witness is [actually] unavailable."); *Equal Employment Opportunity Comm'n v. Times Mirror Magazine, Inc.,* 1986 WL 13015 (S.D.N.Y.1986)(dismissal based on laches denied where defendant offered conclusory discussions of difficulties it could encounter in obtaining witnesses necessary for its case; "personnel changes alone, without a showing of actual witness unavailability, are insufficient to show the prejudice necessary for a successful laches defense."); *Myree,* 789 F.Supp. at 616 (rejecting claim of prejudice because defendant made "no specific showing . . . with respect to its claimed prejudice."). Partners has made no specific showing of prejudice, nor has it provided affidavits to demonstrate that necessary witnesses are, in fact, unavailable because, for instance, they are they are deceased, or because their whereabouts cannot be ascertained despite diligent efforts to locate them. While defendant provides an affidavit from Marki Flannery, Partners' president, which asserts that after receiving plaintiff's summons and complaint, defendant attempted to locate employees who possessed personal knowledge of plaintiff's former employment with Partners, defendant does not discuss in any detail what efforts were made to find these witnesses or the reasons for their unavailability.

Second, Partners' argument that it no longer possesses documentation relating to plaintiff or his employment with Partners serves only to weaken its case, in light of the EEOC regulation that mandates the preservation by an employer against whom a discrimination claim is made of "all personnel records relevant to the charge or action until final disposition of the charge or the action." 29 C.F.R. § 1602.14. *See Kawatra,* 700 F.Supp. at 654 ("any prejudice attributable to defendants' failure to preserve records is entirely self-inflicted.")(*citing Rozen v. District of Columbia,* 702 F.2d at 1204). *See also Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1257 (5th Cir.1979), *aff'd* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)("A party cannot assert the defense of laches merely because

it has failed to preserve evidence despite knowledge of a pending claim.") (citation omitted).

Partners cites several cases, most of them from other circuits, which have found a delay of a duration similar to the one at issue here to be grounds for dismissal of the plaintiff's claim on the basis of laches. *See Whitfield v. Anheuser–Busch, Inc.,* 820 F.2d 243 (8th Cir. 1987); *Garrett v. General Motors Corp.,* 844 F.2d 559 (8th Cir.1988); *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publishing Co.,* 839 F.2d 1147 (6th Cir.1988); *Jeffries v. Chicago Transit Auth.,* 770 F.2d 676 (7th Cir.1985). As previously mentioned, some of these cases can be distinguished on their facts, either because the plaintiff was not proceeding pro se, or because there existed evidence that the plaintiff had shown no interest in the progression of his or her administrative charge for an extended period of time. *See Kawatra,* 700 F.Supp. at 653 ("Those cases that have upheld dismissals have generally done so only where a plaintiff has utterly failed to oversee or show interest in the progress of the administrative charge.") (*citing Whitfield,* 820 F.2d at 245; *Jeffries,* 770 F.2d at 680). To the extent that certain of these cases cannot be factually distinguished, however, this court declines to follow the precedent of other circuits that have penalized a plaintiff for bringing what is technically a timely complaint pursuant to Title VII's administrative scheme.

Defendant also cites one New York state court case, *Pepsico, Inc. v. Rosa,* 213 A.D.2d 550, 624 N.Y.S.2d 622 (2d Dep't 1995), for the proposition that an excessive delay attributable to an agency between the filing of a complaint and the final agency determination causes the defendant substantial prejudice. The court found that a delay of greater than ten years was attributable to the DHR and that no explanation for the delay had been provided. Although the court dismissed the case on the ground that it was barred by the doctrine of laches, it did so after noting that the defendant had lost access to two individuals who would have been called as witnesses. Thus, the defendant in *Pepsico* presumably provided the court with evidence of the witnesses' actual unavailability, as opposed to

the mere conclusory assertions proffered by Partners in this case. None of the cases cited by Partners, therefore, compel a result different from the one reached here. Partners' motion to dismiss or alternatively, for summary judgment, on the ground that plaintiff's claim is barred by the doctrine of laches, is denied.

(2)

■ Partners also argues that plaintiff's claims should be dismissed on the ground that the EEOC exceeded its authority in issuing plaintiff a Notice of Right to Sue more than ten years after the DHR issued its no probable cause determination. Partners contends that the EEOC's ten year inaction in failing to initiate the conciliation process or otherwise process plaintiff's charge represents an abuse of its authority.

The EEOC's Regulations provide that the EEOC is required to issue a Notice of Right to Sue when: 1) it has decided not to sue following the mandate of a reasonable cause finding and a failure to conciliate; 2) it has entered into a conciliation agreement to which the party claiming to be aggrieved has not joined; 3) it has dismissed a charge; or 4) it has made a finding of no reasonable cause. *See* 29 C.F.R. §§ 1601.19(a), 1601.28(b). In addition, pursuant to 29 C.F.R. § 1601.28(a)(1), a charging party may also request a Notice of Right to Sue after 180 days from the date the initial charge was filed. This section states in pertinent part:

> When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, *at any time after the expiration of one hundred and eighty (180) days from the date of filing of the charge with the Commission.*

29 C.F.R. § 1601.28(a)(1)(emphasis added).

Partners contends that the phrase "at any time after the expiration of one hundred and eighty days" should not be construed so literally as to permit the EEOC unlimited time in which to issue a Notice of Right to Sue.

Partners argues that the response to its February 4, 1997, Freedom of Information request revealed that the EEOC took no action in connection with plaintiff's administrative charge for approximately ten years. Moreover, Partners argues, the EEOC's response demonstrates that the agency did not attempt to timely inform the parties that it would either be adopting or rejecting the findings of the DHR, thereby breaching its obligation to either attempt to conciliate an agreement between the parties or dismiss the charge. Partners contends that this inaction is contrary to the EEOC's statutory mandate of seeking to promptly resolve employment discrimination claims. *See* 42 U.S.C. § 2000(e)–5(f)(1). Conceding the lack of Second Circuit authority directly on point interpreting the meaning of the phrase "at any time" as it is used in 29 C.F.R. § 1601.28(a)(1), Partners cites cases for the general proposition that through Title VII's statutory scheme, Congress intended the prompt processing of all charges of discrimination. *See generally Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Publishing Co.,* 839 F.2d 1147, 1157 (6th Cir.1988).[5]

Partners' assertion that the legislative intent behind Title VII and the EEOC's Regulations is to encourage the speedy and efficient resolution of discrimination claims is undoubtedly legitimate. Furthermore, it does appear that ten years is a long time for an administrative charge to linger without action. However, it would be unconscionable to penalize a plaintiff, particularly one who is pro se, for the neglect or inefficiencies of an administrative agency that is overburdened by the high volume of discrimination claims it receives each year. Partners cites the EEOC's recently released National Enforcement Plan for the assertion that "the backlog of cases is unfair to charging parties and

respondents alike, diminishes EEOC's credibility as a law enforcement agency, and consumes valuable resources." EEOC National Enforcement Plan of March 6, 1998. While the court is full agreement with the EEOC's observation, it is patently evident that it would be at least equally unfair to deny an individual plaintiff the opportunity to litigate a claim of discrimination because of the EEOC's administrative foibles, particularly in the absence of an express congressional mandate requiring this result. Partners' motion to dismiss plaintiff's complaint or alternatively, for summary judgment, on the ground that the EEOC exceeded its authority in issuing plaintiff a Notice of Right to Sue is denied.

### Conclusion

For the foregoing reasons, defendant's motions to dismiss or alternatively, for summary judgment, on the ground that plaintiff's claims are barred by the doctrine of laches, and on the ground that the EEOC exceeded its authority in issuing plaintiff a Notice of Right to Sue, are denied.

SO ORDERED:

---

**5.** Partners also cites *Tuft v. McDonnell Douglas Corp.,* 517 F.2d 1301, 1307 (8th Cir.1975), for the proposition that courts have rejected a literal reading of 42 U.S.C. § 2000(e)–5(f)(1), the statutory section that requires the EEOC to issue a Notice of Right to Sue 180 days after it accepts jurisdiction of a charge. Partners, notes that courts have held that the 180 day period does not mark the end of the EEOC's jurisdiction and

does not require the EEOC to automatically issue a Notice of Right to Sue, but that rather, the 180 days is viewed as more of a guideline than a strict limitation. *See id.* Partners argues that conversely, courts should not be constrained to read Title VII's implementing regulations literally so as to permit the EEOC unlimited time to issue a Notice of Right to Sue pursuant to 29 C.F.R. § 1601.28(a)(1).