103 F.3d 257
 IVANI CONTRACTING CORPORATION, Plaintiff-Appellant,
v.
The CITY OF NEW YORK; David N. Dinkins, in his former
capacity as Mayor of the City of New York; and Michael C.
Rogers, in his former capacity as Chief Procurement Officer
of the City of New York, Defendants-Appellees.
 No. 352, Docket 95-9186.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1996.
Decided Jan. 7, 1997.
 
 Michael J. Strenk, Commack, NY, for Plaintiff-Appellant.
 Julian L. Kalkstein, Assistant Corporation Counsel of the City of New York, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, Larry A. Sonnenschein, Assistant Corporation Counsel of the City of New York, New York City, of counsel), for Defendants-Appellees.
 Before: NEWMAN, Chief Judge, and McLAUGHLIN, Circuit Judge.*
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Ivani Contracting Corporation ("Ivani") appeals from an order of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, Judge ), dismissing its complaint in a civil rights action against the City of New York (the "City") on the ground of laches. The court also dismissed Ivani's claim for punitive damages as unsupported by the record. Ivani appeals, arguing that a laches defense is unavailable against its legal claims and that the district court improperly dismissed its claim for punitive damages. For the reasons stated below, we affirm the order of the district court in part, reverse in part, and remand for further proceedings.
 
 BACKGROUND
 
 2
 Under New York state law, all public contracts involving more than $10,000 shall be awarded to the "lowest responsible bidder." N.Y. Gen. Mun. Law § 103. In April 1992, the City adopted § 3-09 of The Official Compilation of the Rules of New York City, providing that the City would award certain public contracts to contractors substantially owned by minorities or females ("M/WBE" contractors)--even if those businesses were not the "lowest responsible" bidders--so long as their bids fell within a designated percentage of the lowest responsible bid.
 
 
 3
 In November 1992, the City invited bids on two contracts to construct sewers in Queens County. Ivani, a contractor owned by Italian males, submitted the lowest bids on both contracts, but was awarded neither.
 
 
 4
 Ivani submitted a bid of $195,836 on the first sewer contract. Although that bid was lowest, the City awarded the contract to the third-lowest bidder ($203,273), a joint venture between Vassallo Construction Corporation and Island Pavement Cutting Company that had sufficient minority and/or female ownership to qualify for the City's bidding preference. The City informed Ivani by letter on December 22, 1992, that it would not receive the contract; officially awarded the contract to the M/WBE contractor on July 6, 1993; and issued an order to start work on January 24, 1994.
 
 
 5
 Ivani submitted a bid of $2,925,830 on the second (and much larger) contract. Again, although Ivani's bid was lowest, the City awarded the contract to the sixth-lowest bidder ($3,094,444), a joint venture between H.H.M. Associates, Inc. and Two Gals Development Corporation that also had sufficient minority and/or female ownership to qualify for the bidding preference. The City informed Ivani by letter on April 22, 1993 that it would not receive the contract; officially awarded the contract to the M/WBE contractor on July 16, 1993; and issued an order to commence work on November 17, 1993.
 
 
 6
 Ivani served the City with a notice of claim on July 19, 1993. Exactly one year later, on July 19, 1994, it sued the City in the United States District Court for the Eastern District of New York. Ivani alleged that the City discriminated against it on the basis of race and/or gender by awarding the two public contracts for which Ivani had submitted the lowest bids to the M/WBE contractors. Ivani asserted claims under 42 U.S.C. §§ 1981, 1983, and 2000d, the Equal Protection Clauses of the United States and New York Constitutions, and N.Y. Gen. Mun. Law § 103. Ivani sought $1,075,000 in lost profits and $10,000,000 punitive damages.
 
 
 7
 By July 1994, when Ivani filed its action, work on both contracts was significantly--if not completely--finished, and the City had paid out most of the contract prices to the contractors on both projects. In neither instance had Ivani attempted to stop the awarding of the contract to the higher-bidding M/WBE contractor by initiating an Article 78 proceeding. See N.Y. C.P.L.R. §§ 7801-06.
 
 
 8
 The City moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), asserting that Ivani's laches barred its claims. The district court agreed. The court also found no evidentiary basis for punitive damages. Thus, the district court granted summary judgment to the City and dismissed Ivani's complaint in its entirety.
 
 
 9
 Ivani now appeals, arguing that (1) laches is unavailable against its legal claims for damages for civil rights violations; (2) in any event, laches should not apply on these facts; and (3) the district court improperly dismissed its claim for punitive damages.
 
 DISCUSSION
 
 10
 We review the district court's grant of summary judgment de novo. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996); Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 967 F.2d 742, 746 (2d Cir.1992).
 
 A. Laches
 
 11
 Ivani argues that the district court erred in holding that laches could bar its claims. We agree.
 
 
 12
 As Justice Holmes has observed, "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921). The doctrine of laches has a historical pedigree pre-dating the statutory enactment of periods of limitations. Even when there were no statutory periods, the Chancellor in Equity, the "King's Conscience," could withhold relief when the plaintiff's delay in coming to Equity was inordinate and had caused prejudice to the defendant.
 
 
 13
 Laches is "an equitable defense based on the ... maxim vigilantibus non dormientibus aequitas subvenit (equity aids the vigilant, not those who sleep on their rights)." Stone v. Williams, 873 F.2d 620, 623 (2d Cir.), cert. denied, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), vacated on other grounds, 891 F.2d 401 (2d Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). It bars a plaintiff's equitable claim where he is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); see also Gardner v. Panama R.R. Co., 342 U.S. 29, 30-31, 72 S.Ct. 12, 13-14, 96 L.Ed. 31 (1951).
 
 
 14
 The first attempt at legislating a period of limitations is found in the statute of 32 Henry VIII (1541) and was restricted to actions involving real property. It was superseded by the statute of 21 James I, ch. 16 (1624), extending the limitation to personal actions as well as real. Modern statutes of limitations trace directly back to 1624, and embody the notion that fixing the periods for bringing damages actions is a legislative function that imposes certainty and predictability upon how long a defendant should be subject to suit.
 
 
 15
 The Supreme Court long ago recognized that, while the doctrine of laches survived as a further limitation upon granting relief in equity, "[l]aches within the term of the statute of limitations is no defense at law." United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 818, 79 L.Ed. 1559 (1935). True, Mack preceded the "merger" of law and equity in the federal courts. See Fed.R.Civ.P. 2. But the Court reiterated this traditional rule much more recently, at least in dicta. In Oneida County v. Oneida Indian Nation of New York, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), the Court found it unnecessary to reach the issue, but nonetheless volunteered that "application of the equitable defense of laches in an action at law would be novel indeed." Id. at 244-45 n. 16, 105 S.Ct. at 1256 n. 16. Justice Stevens, in a dissent, noted that, "[i]n deference to the doctrine of the separation of powers, the Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes." Id. at 262 n. 12, 105 S.Ct. at 1266 n. 12 (Stevens, J., dissenting).
 
 
 16
 We have held--without explication and citing only Mack--that laches cannot bar a suit under the federal False Claims Act, see 31 U.S.C. § 231 et seq., because "[l]aches is not a defense to an action filed within the applicable statute of limitations." United States v. RePass, 688 F.2d 154, 158 (2d Cir.1982); see also Morgan v. Koch, 419 F.2d 993, 996 (7th Cir.1969) ("[w]here ... a litigant is seeking to enforce federal and state rights in law only, the applicable statute of limitations controls rather than laches"). Citing (among diverse other cases) our decision in RePass, the Eighth Circuit has more cogently stated that "separation of powers principles dictate that federal courts not apply laches to bar a federal statutory claim that is timely filed under an express federal statute of limitations." Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 170 (8th Cir.1995) (Title VII and Equal Pay Act claims); see also Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 586 (9th Cir.1993) ("[b]ecause Congress provided a statute of limitations to govern ADEA actions ... [those] claims cannot be barred by laches"), cert. denied, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). An express limitations period "reflect[s] a legislative 'value judgment' " striking the appropriate balance between the interests promoted by the statute and countervailing interests of repose. Ashley, 66 F.3d at 169 (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)).
 
 
 17
 The prevailing rule, then, is that when a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely.
 
 
 18
 Here, Ivani seeks no equitable remedy, but only money damages (that is, "legal" relief), on claims largely derived from specific federal statutes. But the statutes upon which Ivani relies--42 U.S.C. §§ 1981, 1983, and 2000d--do not have express limitations periods; rather, they each borrow their limitations period from state law. See Holt v. KMI-Continental, Inc., 95 F.3d 123, 131 (2d Cir.1996) (§ 1981); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir.1994) (§ 1983), cert. denied, --- U.S. ----, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995); Egerdahl v. Hibbing Community College, 72 F.3d 615, 617-18 (8th Cir.1995) (§ 2000d). The Ashley court, in a footnote, intimated (but did not hold) that the prevailing rule may not apply when a federal statute borrows its limitation period from state law:
 
 
 19
 [W]hen Congress by its silence borrows the most analogous state statute of limitations for a federal claim, there is something of a federal legislative void. Thus, separation of powers principles are less affected by a judicial decision to superimpose the doctrine of laches on the borrowed state statute of limitations.
 
 
 20
 Ashley, 66 F.3d at 170 n. 4.
 
 
 21
 Legislative silence on limitations periods is "a void which is commonplace in federal law." Wilson v. Garcia, 471 U.S. 261, 266, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (internal quotations omitted). When Congress by such silence adopts the limitations period governing analogous state claims, it "incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement." Wilson, 471 U.S. at 271, 105 S.Ct. at 1944. It does so "to assure that neutral rules of decision will be available to enforce the [federal statute]." Id. at 269, 105 S.Ct. at 1943.
 
 
 22
 Congress's decision to incorporate state law, therefore, does not reflect indifference. Rather, Congress is thereby adopting a predetermined balance between competing policies that has the added virtue of promoting neutral rules of decision in a crucial area of law (civil rights). A federal legislative decision to borrow a state statute of limitations for a federal substantive statute is, then--just as is an express federal statute of limitations--a legislative choice that separation of powers principles compel us to respect.
 
 
 23
 For the proposition that laches may apply even to Ivani's legal claims, the City relies on Soules v. Kauaians for Nukolii Campaign Comm., 849 F.2d 1176 (9th Cir.1988). In Soules, plaintiffs challenged the results of a special election on constitutional grounds, seeking both equitable and legal relief. The Ninth Circuit held that the plaintiffs' equitable claims were barred by laches, and their damage claims were barred "[f]or much the same reasons." Id. at 1182. The court, however, never addressed the separation of powers principles set forth above, and relied instead on the special role of equitable principles in the election context. See id. at 1180; see also Gjersten v. Board of Election Comm'rs, 791 F.2d 472, 478 (7th Cir.1986). In any event, we find Soules unpersuasive in our case, particularly in light of the many cases recognizing that laches cannot bar legal relief under § 1983. See, e.g., Nilsen v. Moss Point, 674 F.2d 379, 388 (5th Cir.1982) ("although the equitable part of a mixed [§ 1983] claim can be barred by laches, the legal part will be barred only by the statute of limitations"), vacated on other grounds, 701 F.2d 556 (5th Cir.1983) (en banc).
 
 
 24
 We also find Dickey v. Alcoa S.S. Co., 641 F.2d 81 (2d Cir.1981), and Stone v. Williams, 873 F.2d 620 (2d Cir.1989), both relied on by the district court, to be inapplicable. The district court noted that in those cases this Circuit "embraced [laches] to bar damage claims as well as those that are equitable," but, in both instances, this again disregards history.
 
 
 25
 Stone was vacated by a subsequent decision of this court. See Stone v. Williams, 891 F.2d 401 (2d Cir.1991). And Dickey was an admiralty case. As Justice Story explained, there were originally "no prescribed limits beyond which, in the exercise of admiralty jurisdiction, the courts of the United States [could] not take cognizance of suits." Willard v. Dorr, 29 F. Cas. 1277, 1278 (C.C.D.Mass.1823) (No. 17,680); see also Uisdean R. Vass & Xia Chen, The Admiralty Doctrine of Laches, 53 La. L.Rev. 495, 497-98 (1992). Admiralty suits were governed by "presumptions ... which are equally fatal to a recovery." Willard, 29 F. Cas. at 1278. Laches was one of them. Since Willard, "laches has immemorially been applied to admiralty claims to determine whether they have been timely filed." DeSilvio v. Prudential Lines, Inc., 701 F.2d 13, 15 (citing The Key City, 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871)); see also Usher v. M/V Ocean Wave, 27 F.3d 370, 371-72 (9th Cir.1994).
 
 
 26
 By the beginning of the 1980s, federal law expressly provided a three-year limitations period for personal injuries at sea, see 46 U.S.C.App. § 688, and a two-year limitations period for death on the high seas, see former 46 U.S.C. § 763 (since repealed). See Usher, 27 F.3d at 371. But "[o]ther claims ... were [still] governed by ... laches" until 1980, when 46 U.S.C.App. § 763a imposed a three-year statute of limitations on maritime tort claims in general. Id. Because Dickey was decided before § 763a, that case was governed by the historical rule in admiralty that "the delay which will defeat ... a suit must in every case depend on the particular equitable circumstances of that case." The Key City, 81 U.S. at 660; see also Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956). Dickey is therefore not dispositive.
 
 
 27
 Nor are we persuaded that a different rule should apply just because municipal contracts are involved. We appreciate that a judgment in favor of a disappointed bidder (1) interferes to some degree with the state's prerogatives in awarding its public contracts; and (2) may force the citizens to "pay twice" if the court awards damages. See DRT Mechanical Corp. v. Collin County, 845 F.Supp. 1159, 1163 (E.D.Tex.1994).
 
 
 28
 Because § 1983 was created specifically to provide a remedy where a state or municipality violates a plaintiff's federal rights, the "state prerogative" argument pales:
 
 
 29
 Section 1983 was ... a product of a vast transformation from the concepts of federalism.... The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial.
 
 
 30
 Mitchum v. Foster, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972) (internal quotations omitted).
 
 
 31
 Although the public may "pay twice" for the mistake, we cannot allow the City to distribute its largess in a potentially unconstitutional manner, and then chant the mantra of "public interest" when called to account for the violation that its process precipitated. It should also not pass unnoticed that the City chose to implement the challenged contracts, and even to pay out on them, despite the fact that Ivani had already declared its intent to sue by filing its notice of claim under N.Y. Gen. Mun. Law §§ 50-i and 50-e.
 
 
 32
 This calculus is unchanged by the availability of quick state-law injunctive relief. Although Ivani could have brought an Article 78 proceeding to challenge the city's contract award, see N.Y. C.P.L.R. §§ 7801-06, requiring Ivani to do so, in state court and within the four-month limitations period applicable to such proceedings, would undermine the broad compensatory goals of § 1983. Cf. Felder v. Casey, 487 U.S. 131, 152-53, 108 S.Ct. 2302, 2314-15, 101 L.Ed.2d 123 (1988) (state notice-of-claim statutes cannot bar § 1983 relief). While it is hornbook law that the availability of effective legal relief will bar an equitable claim, see United States v. State of New York, 708 F.2d 92, 93-94 (2d Cir.1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984), few would suggest that available equitable relief will bar a legal claim. We decline to announce such a rule here, particularly where the equitable relief is found in restrictive state law, and the legal relief is based upon a broad federal civil rights statute.
 
 
 33
 We therefore cannot allow laches to bar Ivani's claim, which was otherwise timely filed under § 1983's three-year limitations period as borrowed from analogous state law. See Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir.1995). Ivani's federal claims are reinstated, subject to further proceedings consistent with this opinion.[1]
 
 
 34
 The district court dismissed Ivani's state claims on jurisdictional grounds because it had dismissed all Ivani's federal claims. See Albany Ins. Co. v. Esses, 831 F.2d 41, 45 (2d Cir.1987). Because we now reinstate Ivani's federal claims, we also reinstate Ivani's state claims, again subject to further proceedings consistent with this opinion.
 
 B. Punitive Damages
 
 35
 Ivani also maintains that the district court erred by dismissing its claims for punitive damages. We disagree.
 
 
 36
 Ivani concedes that it cannot recover punitive damages against the City itself. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). It nonetheless asserts that it can collect punitive damages from the municipal officers it has sued. Ivani, however, has sued those officers in their official capacity only, so they enjoy the same immunity from punitive damages as the City. See Brandon v. Holt, 469 U.S. 464, 471-73, 105 S.Ct. 873, 877-79, 83 L.Ed.2d 878 (1985) (suits against government officials in their official capacity are treated as suits against the government itself); Greiner v. County of Greene, 811 F.Supp. 796, 800-01 (N.D.N.Y.1993). Even if Ivani had sued those officials in their individual capacities, the record is devoid of evidence of the "evil motive or intent" or "callous indifference" that is essential to an award of punitive damages. See Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).
 
 CONCLUSION
 
 37
 We hold that (1) laches is not available to bar Ivani's legal claims for damages under § 1983; and (2) the district court properly dismissed Ivani's claims for punitive damages. The judgment of the district court is therefore AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable J. Edward Lumbard withdrew from the panel shortly before oral argument, and the appeal is being disposed of by the remaining members of the panel, who are in agreement. See 2d Cir. R. § 0.14(b); Murray v. National Broadcasting Co., 35 F.3d 45, 47-48 (2d Cir.1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995)
 
 
 [1]
 Because we hold that laches does not apply to Ivani's legal claims, we do not reach the question whether the elements of laches, were it to apply, could be proven in this case